I want to begin with the Fourth Amendment issue here and dial into the one issue that's still alive on this appeal, which is not whether the Constitution is violated or not. The government hasn't submitted any argument on that point. It's not whether the government's conduct was within the terms of the warrant. Again, the government hasn't submitted any argument on that point. The only issue left is the remedy. What should this court do about it? Dr. Aboshady submits that there's only one permissible remedy here, and that's wholesale suppression. Because what happened here is the government just ignored the terms of the warrant, acted like they didn't exist, seized every piece of electronic data from Dr. Aboshady's email account and the accounts of a number of other individuals, and then continued to simply hold it and search it however they wanted, whenever they wanted, with whatever new terms they wanted, throughout the entire life of the case. And the government's free if the government hasn't said anything about what the status of that electronic document database is at this point today. So we have every reason to think that that database is still open, able to be searched now, today, five and a half years after all those emails were seized. And even worse, when the government got caught, when this issue was pointed out, the government didn't confess later, the government didn't take any remedial steps. Instead, the government doubled down and argued that actually the warrant didn't have any limits because doing anything else was not feasible, or because the electronic medium was just one piece of data. Can I just make sure I'm understanding what you're telling us? Yes. Are you saying the government has conceded that the warrant did not authorize what the government did with it? Or are you saying that the government is disputing whether the warrant authorized what they did with it? In the court below, the government did dispute, made all of these arguments, made a series of arguments about why what it did allegedly comported with the terms of the warrant. Those arguments haven't been made on appeal here. But I respectfully submit that the nature of the arguments made below is relevant. But I'm not sure that was an answer to my question. I'm sorry, Your Honor. Is your position to us that the government has conceded that the warrant did not authorize what they did? I think they certainly weighed in the arguments of the contrary, Your Honor, yes. I think that the failure to present an argument with... Suppose I didn't agree with you on that. Yes, Your Honor. For you to win, you first have to show that the warrant did not itself authorize what the government did. Yes. But you don't make any argument. Are you making an argument that the warrant did not authorize it? Yes, Your Honor. That's in our brief. We spent several pages on that point. And what do you do with the language in the warrant that seems broad and to describe all of this material being something that they can seize? So, Your Honor, I think that we have to look at the two parts of the warrant and note that the Section 2 of the warrant, and this is all in compliance with Rule 41, every piece of electronic data can be seized as an initial matter from the relevant ISP. What then can't happen is that that data can't be... It has to be searched. The government has to comply with the search warrant and search it, and it is only then entitled to seize and hold forever the documents that are set forth in Section 3 of the warrant. Is there a time limit on how long the searching of the documents that you're now conceiving validly seized initially? No, Your Honor. I think I don't conceive that those are seized for amendment purposes under Rule 41 as an initial matter. What I understand the case law to be is that the government can take all those materials... And that's not a seizure? And can... When they take all those materials, that's not a seizure? The way that this is supposed to work is that those materials are supposed to be seized and then... So they are seized? Yes, Your Honor. I conceive that. Okay, so they were seized. All of it could be seized, and all of it was seized. Right. Then there's limits on what can be done with the seized material in terms of how it's searched. That's correct, Your Honor. And then there's limits as to what can be taken based on those searches. That's correct, Your Honor. Okay. Is there anything in the warrant that tells us how long they can hold the validly seized materials to search them? Anything in the warrant that tells us that? As to a specific time period? No, Your Honor. I'd say that that's a Fourth Amendment reasonableness issue. Okay. Do you make a challenge to the warrant for lack of having a time limit? We did. We made this... To us? We made the argument... To us? To us. Yes, Your Honor. We make the argument that this... That what was done here, which is that the... I think the argument is simply, Your Honor, that it was seized for an unreasonably long period of time. And that the... I'm sorry, Your Honor. Are you challenging the warrant when you say that, or are you challenging the execution of the warrant? Execution, Your Honor. Okay. So with respect to the execution, what in the warrant says they couldn't have it for this long? There is no... So then how could you be saying that they violated the warrant's term in their execution of it if you're not making an argument that the warrant told them they couldn't have it this long? I'd point you back, Your Honor, to the point that's made in the comprehensive drug testing case in the Ninth Circuit, which is that one portion of a warrant cannot eviscerate the terms of the entire warrant. So what the government argued when this issue came up, among other things, is that the point, I believe it's item 9 in section 3 of the warrant, which talks about identity, that actually every email was properly seized under that provision in section 3 of the warrant. And the argument is that that's... One can't interpret a warrant to, as the Ninth Circuit put it, to eviscerate all the other terms of the warrant. In other words, simply if item 9 actually means every piece of electronic data is properly seized, then that... Just so I understand, I think I'm just not tracking, and I want to make sure I do. We just, I thought, agreed that all of the documents that the government initially possessed were properly taken. Yes, Your Honor, as an initial matter. Okay. Then there's a question of what you can do with those documents once you have them. Yes, Your Honor. And there are limits to how they can be searched. Yes, Your Honor. And then from those searches, there's limits to what you can then keep and use in the case and all that. Yes, Your Honor. But there was this initial seizure of all these documents. What in the warrant says at some point they had to return them? That's, I think that's... So I'll answer that question in two parts, Your Honor. One is there is nothing that expressly says that in so many works. Okay. And what is your position about what the warrant implicitly says on that point?  There's Section 2 that says you get to go to the relevant ISP and get all of this data and have it. And then Section, for some period of time, that is limited. Then Section 3 is called records and data that can be seized by law enforcement. And so that implies that there is another step. And that's what Rule 41 says, that there is another step. And what we're saying, what Dr. Al-Bashawi respectfully submits, is that there must be a second step. The government at some point must go to Step 2 within some period of time. But I don't understand the argument that they didn't do that. They used search terms to search the data that you are conceding was properly seized. Your Honor, I'd point you on that point to the way case under the Southern District of New York. In fact, each additional set of search terms, especially when they're, we, well, I'll start by saying, we don't know what the search terms were, Your Honor, and we don't know when they were applied. All of our requests for discovery on that point were denied. So there is no visibility into what the government actually did. It has said search terms were applied, but we don't know what they were. We don't know how they were tethered to the terms. Appealing the denial of the discovery order? Your Honor, we're talking about appealing the denial of the discovery order. That wasn't an argument made in the brief, Your Honor. Okay. But I think it does inform our point that the government simply says search terms were applied, but there's no factual basis on which, for this Court to evaluate what those were into a formal basis. You know what they introduced into evidence. So they came up with some search terms that resulted in relevant evidentiary material being found for trial. That's correct, Your Honor. There was relevant material introduced at trial, but that is separate from the Fourth Amendment challenge here. I'm still trying to figure out. So is the challenge that they still have it and you want it back? The challenge is that they still have it and it was seized outside the terms of the warrant. The warrant, again, this goes back to the two-tier structure of the warrant, Section 2 and Section 3. Section 3 does not mean everything. Are you saying that they seized certain documents that were later deemed to be relevant and admissible, but you don't know what else they may have seized? Your Honor, we do know what they seized. But you're not saying that was wrong. Well, Your Honor, respectfully, yes, we are saying that was wrong. No, just to be precise, you're not saying it was wrong to have seized all of it. You're saying the continued seizure at some point became wrong. Yes, Your Honor. Okay, so with respect to that point, what is it? What is the point at which it became too long under the warrant? Your Honor, I think that the only place to go back to on that is the reasonableness requirement under the Fourth Amendment. But the cases seem to talk about holding it so long that the warrant becomes stale or they acted in bad faith. Do you disagree with those standards if I've stated what the cases say correctly? I don't think, broadly speaking, but I do, Your Honor, no, I don't disagree with that. And I think that the ‑‑ So how do you meet either one of those standards? So, Your Honor, I think that the point here is, again, where the government has acted in such a way that it's saying we were never under any obligation to conduct the second step of this search and to at some point say, yes, we're done and this is what we've seized. And instead took the position, Section 3 of the warrant actually authorized us to seize everything. I believe that that is conscious disregard of the terms of the warrant. And these are, again, these are points that were never made to the maximum effect. So let's say that, for sake of argument, we agree with you on all of that. Do you still have a hurdle with respect to remedy? I think at that point, Your Honor, when we're talking about conscious disregard of the terms of the warrant, that aligns with the Davis case for reckless disregard of both privacy interests of the individual and the Young and Haney cases, which talk about flagrant disregard of the terms of the warrant. I think that's the point where we ‑‑ where the analysis aligns and that that makes wholesale suppression appropriate here. So I think I'm getting the argument. Your position is that the government is asserting to us that under the terms of the warrant, it can keep all of this material forever. That's the argument that was made below, Your Honor, but it hasn't been made by the government in its brief to this court. But it wasn't accepted by the district court, was it? Well, the district court's opinion on this point, I think, does say that, at least with the point that I was talking about earlier with respect to the identity evidence, that theory that the identity point, I believe it was item 9 in the search warrant, actually authorized seizure forever of everything in the e-mail account. I believe the district court did adopt that position. But then you have to say that the warrant didn't authorize that. And that is the argument. The warrant didn't authorize the seizure. That item 9 in the warrant cannot bear the weight that the government and the district court put on it. Your position is that the only argument that the government has as to what they're doing is an argument that they have the right to seize everything when you're saying there's no way the warrant could have? Authorized that. I think that's right, Your Honor. I'm not entirely certain I follow, but I believe. Well, it seems to me there's two possibilities that are going on here. One is the government's taking the view that the warrant authorized the initial seizure and then authorizes searches, consonant with that, for some unspecified point of time, which we might say can be no longer than the Fourth Amendment itself would allow, which might be at the moment it becomes stale or when there's a showing of bad faith. If that was the government's position, you could only win if you could show that the government has held it beyond the period of time in which it became stale or show that they were in bad faith doing searches that they shouldn't have been doing. You might have trouble making either of those showings given what you've argued to us. I think that accurately describes what we'll call prong one, Your Honor. Okay, then the other possibility is the government's position is, notwithstanding that the warrant had those implicit limits, they take the view they may hold it forever and just leave it in the warehouse or look at or do whatever they want with it and that they're authorized by the warrant to do that. And your position is that insofar as they thought they were doing that, they're in violation of the warrant. That's correct, Your Honor. How do you get from that to consciously disregarding the warrant? That would suggest that what they were doing is mistakenly disregarding the warrant. Well, I think that there's simply no way to read the warrant to authorize what I'll describe as the second thing that you're pointing out there. There's no way to read the warrant to authorize that. It simply makes no sense to have Section 3 of the warrant even exist. And what do we do with the fact that the district court seemed to think that the warrant could fairly be read that way for purposes of a conscious disregard or bad faith or such egregious governmental behavior that we have to disregard normal harmless error and throw out all the evidence? Well, I think that the district court, if you read the district court's opinion, there's a three-page section titled Necessary Caveat Regarding Suppression of Evidence. The district court wrote at length that there must be some limitations on the government's conduct. So if that's how the case is coming off, why wouldn't we assume that the government understands that to be the limits of the warrant? Because they're not in disregard of it then. They're only holding it in accord with what the district court said it is. Yeah, I respectfully submit that that's a – the district court's opinion on this point, I would respectfully submit, is internally inconsistent on this point, and that's where our challenge is pressing, that point. Doesn't that then put pressure on your argument that they're consciously disregarding it? When a district court has told them you could read it this way? I don't know that the district court's opinion when it's talking about the necessary caveat regarding the suppression of evidence, I don't know that it's squarely addressing the point that Your Honor zeroed in on here. But I think that the point that we would submit is that – I would simply come back to the point about the two-tier structure of the warrant, and it simply does not make sense to have the warrant authorize the seizure under Section 3 of – in other words, the set of material seizable under Section 3 cannot be identical with the set of material seized under Section 2. That simply is an unreasonable reading of the warrant to the extent the district court agreed with that. We would submit that that's an error of law that this Court can review de novo and correct as such. You've reserved some time. We'll hear from the government. Good morning, Your Honors, and may it please the Court. Ross Goldman for the United States. I will obviously address the Fourth Amendment claim, and I want to make one big-picture point before going to some of the specifics. And the big-picture point is that although we argued partial suppression in our answering brief, we are not conceding that there was a constitutional violation here, nor are we conceding, as Dr. Agboshadi maintains in his reply brief, that if there was a violation, it resulted from flagrant or reckless officer misconduct. To the contrary, everything the agents did in this case was consistent with the terms of the warrant and permissible under the Fourth Amendment, and I am obviously happy to address the merits of that claim. The reason that we argued partial suppression, however, is because in Dr. Agboshadi's opening brief, he did not cite a single piece of purportedly nonresponsive material that was actually introduced into evidence at trial. And because of that, this Court's well-established line of partial suppression precedent, cases including Riggs, Young, Morris, Fallon, they're cited in our brief, make clear that the general rule in this circuit, and indeed in other circuits as well, is that when some evidence is seized properly and some is not, only that which is not is subject to suppression. Even granting Dr. Agboshadi's premise that some of this personal material was improperly seized under the warrant, the fact that none of it was introduced into evidence is what implicates in the partial suppression precedent in which forecloses his claim for relief. As to the point about whether there was the type of flagrant misconduct here that would warrant blanket suppression, there isn't. And the reason why is because even looking at these personal e-mails, the warrant, and this is at page 86 of the appendix, specifically allows the government to search and seize records the identity of the person or persons who have owned or operated the e-mail accounts, including Dr. Agboshadi's. These personal e-mails are directly responsive to that provision of the warrant. And that is the top-line response to Dr. Agboshadi's merits argument. It is also the case that if for some reason this Court were to conclude that the personal e-mails are not responsive  it's by no means clear or obvious why that would be the case. In other words, a reasonable officer reading this language in the warrant could well have believed that the warrant authorized the seizure of these personal e-mails. And indeed, Dr. Agboshadi, in neither his opening nor his reply brief, articulates any principled argument for why these personal e-mails fall outside the scope of this identity provision in the warrant, a provision which I want to be clear, Dr. Agboshadi has never challenged the warrant. Indeed, he explicitly is not challenging the warrant. And we cite the language in our brief, it's page 3 of his reply brief with the suppression proceedings, where he made clear that this was not a challenge to the warrant, but only a challenge to the execution of the warrant. Can you back up one step from the e-mails you just described? I understand the defendant to be arguing, maybe I'm misunderstanding him, that all of the e-mails are taken, initially, and that's authorized by the warrant. Yes. But at some point, you can't just hold all of them. I agree, I believe that is his argument. Okay. So, that's an argument, yet you are still holding all of it. Correct. Okay. So, to the extent the warrant says you should have stopped, you would be in flagrant disregard of it. So, you must be making an argument that it didn't say you had to stop. No, the warrant does not say you have to stop. And indeed, Rule 41, specifically in the commentary, says that the 14-day time limitation goes toward executing the warrant, that is, getting the material, and does not go to the period of time during which the search process... As to how long the warrant authorized you to hold all those materials to run searches on them? So, a couple of points, Your Honor. I think the answer is a general Fourth Amendment reasonableness standard. That standard is going to vary and be subject to the particular facts and circumstances in the case. If this were a case where there was only a few e-mails and the criminal activity was straightforward and you could see it on the face of the e-mails, what is reasonable in terms of a search period might be somewhat short. But this is a complicated criminal scheme. And I would point the Court for this issue to the Anderson decision from the Supreme Court, and in particular, footnote 10, where the Court talks about in complicated fraud schemes where you have lots of, in that case, paper documents, but it would go for e-mails as well. This is a bit like putting together a jigsaw puzzle where it's hard to know whether an e-mail from Dr. Aboshadi to Dr. Massali that says, all set, it's hard to know whether that means anything until it's married up with other communications that show all set is how they communicated, okay, medical records have been fraudulently prepared and now they're ready for submission. So do you agree with the defendant that that provision 9 does not in and of itself amount to an authorization to hold all of the e-mails regardless of their contents forever? No, I don't. I think it's paragraph 3 of section 3, which is the identity or control provision. No means what? No means yes or no means no? No, we do not agree with the defendant on that point. But the top-line reason why is because we disagree with the defendant's position that these materials are non-responsive. So in the government's view, all of these personal materials, the materials that are in the sealed appendix, it even exhibits 64 and 74, which Dr. Aboshadi references for the very first time in his reply brief, which are e-mail communications between Dr. Aboshadi and his accountant about income taxes. All of those e-mails are directly responsive to the warrant, and there is no rule that I am aware of or that Dr. Aboshadi is pointing to that would limit the extent to which we can search material that is deemed responsive to the warrant. His argument is that these e-mails are, in fact, not responsive, and so therefore we had some obligation to, I'm not sure what, return them or destroy them. It's a bit unclear. Even if the Court thinks that that is the sort of right way of thinking about it in terms of the responsiveness or lack thereof of these personal communications, it's a very complicated question about how and whether the government should have to return those purportedly non-responsive e-mails. And for that, I would point the Court to the Second Circuit's end date decision in the Ganius case, which, although resolving that case on good faith grounds, has a lengthy discussion about just how necessary it is for the government to keep possession for discovery purposes, for authentication purposes, of the entire corpus, even if some of that is not responsive. Now, again, for two reasons. So do you intend to hold on to it until conceivably the Supreme Court has made the final determination and then call it and return it? So my understanding of the general rule is that the government is entitled to retain, search, and seize property like this through the termination of criminal proceedings. I would grant the Court that, and this is the struggle in Ganius a bit. Just so I get it. Yes. The check on that would be a Fourth Amendment challenge to the particular requirements of the initial warrant, which is not before. It is explicitly not before you. Correct. So in other words, it may be, and I'm not going to concede this, it may be that that initial warrant allowed you to take too much. But if it did, it did. You're not then in flagrant violation of it by holding it until the criminal proceedings end. You're just following the warrant. That's your view. Correct. That is our view. And that's apart from Section 3 in the identity issue. No, that's right. That's right. Because when you say no, you mean yes? I mean that even if, what I think I need to say is that even if this, even if the Court treats the personal e-mails as not responsive to the warrant, the government would be entitled to retain possession of those as part of its need to keep hold of them. But the whole point is that you were initially authorized to seize, and there's no challenge to us, to the warrant, allowing you to have taken that all at the beginning. No, I don't know. At the beginning, no, definitely not. But again, for two reasons, I think these are, this issue about retaining the personal e-mails, were two levels removed from this Court actually needing to get into the details of that. One is because they are indeed responsive to the warrant, as the district court concluded. And two, as we argued in our brief, because none of these materials, with the exception again of Exhibits 64 and 74, because none of the other materials were introduced, there's nothing to suppress. Neither of those points are responsive to his flagrant violation. So the flagrant violation, and that is indeed the standard for courts to apply blanket suppression. What I think is the key insight here with respect to why there was no bad faith, sort of intentional bad faith on the part of the executing officers here, is both because, as I said, a reasonable officer could easily read this warrant to allow seizure and to think that these personal e-mails are responsive to the extent they do indeed show that it was Dr. Aboshadi who was controlling the e-mail account at the time in question. The other point here is that the officers would have been entitled, and I take it there's no dispute on this, to look at every single e-mail one by one to determine responsiveness to the warrant. The process that the government actually undertook was in many respects more privacy protective because it involved running search terms through and not examining each one by one. And, you know, we cite some authority in our brief for the proposition that, although running search terms is not necessarily required under the Fourth Amendment, it is indeed a more privacy protective practice. And so that's why I think this case really does not approach the kind of bad faith, intentional or flagrant misconduct on the part of officers that this court, and Young and in Hamey and elsewhere, this court has described those blankets of pressure. How long have you had the whole corporate safety material? I guess we have had it since we executed the warrant, which would have been roughly about, I could find the exact date, but probably about five years now for during the investigative phase up through trial and now. Maybe it's four and a half years. And in terms of how we're supposed to think about scaleness then, which you concede is an implicit limit in the warrant. But wait a minute. In answering that, is it fair to assume that you're no longer searching? In other words, you have custody of it, but are you still running searches? You know, Your Honor, I don't know for sure. I have not asked that question. I can't imagine why we would still be running searches since trial is over and now we're on appeal. So there's really no need to continue to run searches through the material. The record is now what it is, so I don't believe so. And is everyone you're planning to indict, they've been indicted at this point? I don't know that I can answer that question. There were a couple of, you mean of the six people that were involved in the Gmail warrant? Yes. I don't know the answer to that question for sure. I know the government took the position that the two billers, Nancy Gordon and Diane Pimentel, one of them testified pursuant to an immunity agreement, another one we took the position and told the district court that she did not have criminal exposure in this case. Beyond that, the record really doesn't show, and I don't know the answer to Your Honor's question. It was related to Judge Barron's question about scaleness. So I apologize. No, implicit in Judge Thompson's question I'm now realizing is a possibility that scaleness doesn't need to be an absolute limit on your ability to hold the corpus. Scaleness might be a limit on your ability to continue to search the corpus. I suppose if in the sense that there was probable cause has been extinguished, that there would be perhaps... Unless you have some administrative reason why you may need to be able to handle it, have the corpus going forward for purposes of discovery battles that may ensue and all the like, would be different than whether you can hold it for 10 years and continuing to search. That would be different. That's right. And there are cases out there where... So what is the government's position as to how long you can hold this thing? Well, at this point our position is we can hold it until the termination of criminal proceedings because it's all responsive to the warrant. And even if it's not responsive to the warrant, some of it, we can hold all of it because of our obligations for discovery, authentication, to keep the corpus as a whole, pursuant to the pending termination of criminal proceedings. So you leave the warrant to, not just because it's all responsive, but even to the extent it's not responsive, to have authorized you to hold all of this until the end of criminal proceedings. The warrant does not say anything about that at all. And so I think the general default rule would apply. And, again, to the extent Dr. Al-Mashadi thinks that there's something defective in the warrant... That should have been challenged. That should have been argued below, and, again, he clearly did not do that. I have a minute left. I'm happy to discuss more on partial suppression or the merits. I can also answer any of the Court's questions about the instructional challenge. Yeah, I'd like to hear your position on the Court's instruction. Sure. So our position is that there are actually two instructional issues here. One is the subpoena power instruction, that the challenge to that is preserved. The other is what we call the no inference instruction. We think that issue is not preserved and is subject to review only for plain error. And if I can just, because I know this is a disputed point, the reason why we think the no inference instruction is subject to review for plain error is because when Dr. Al-Mashadi objected to this instruction, this is at page 1032 of the appendix, he objected only to the subpoena power instruction and did not reference or quote or cite at all the no inference language. And I would similarly point the Court to page 40 of Dr. Al-Mashadi's opening brief where he similarly identifies what the error was and he quotes only the subpoena power instruction. So that's why we think the no inference instruction is subject to review for plain error. If we disagreed with you on that, could you win? Oh, yes. How so? Well, on the subpoena instruction, excuse me, on the no inference instruction, we would win both because there's no error and because there would be no effect on his substantial rights, no prejudice. The reason there would be no error is because as this issue comes to this Court, and let me just step back for a minute, Dr. Al-Mashadi asked the District Court for a missing witness instruction that would have allowed the jury to hold it against the government that certain witnesses did not testify. The District Court denied that request and Dr. Al-Mashadi has not appealed the denial of a missing witness instruction. So as this issue comes to this Court, a missing witness instruction was not warranted and therefore it follows, and this is from cases like Jimenez-Torres and Diaz-Diaz, that it would have been indeed impermissible for Dr. Al-Mashadi to have asked the jury to hold it against the government or to assume that the missing witnesses, the Egyptians in this case, would have testified adversely to the government. Indeed, Dr. Al-Mashadi made this very point in his closing argument, which preceded the instructions, and this is at page 968 of the appendix, when he said, Joseph Ashrock wasn't here and you can't speculate as to what he would have said. That's what the no inference instruction was doing. The other thing I would note about the no inference instruction is that it was protective of Dr. Al-Mashadi as well because the instruction said that the jury can't hold it against the government or the defendant that certain witnesses didn't testify. The jury may well have been wondering why Dr. Al-Mashadi didn't call these people. Now that would have probably been an impermissible sort of burden-shifting idea for the jury to hold it against the defendant that he didn't call a witness, but this instruction prevented the jury from doing that. The other point I would make with the no inference instruction, going to harmlessness in particular, is that, as this Court has made clear, when it reviews jury instructions, it reviews them in context. It doesn't pluck it out and assess the prejudicial effect in isolation. In context, the district court instructed the jury a number of times in a number of formulations that the government's burden was to prove every element of every offense beyond a reasonable doubt and that the failure of the government to do so required the jury to acquit. So Dr. Al-Mashadi's prejudice argument, which is that this no inference instruction basically gave the jury an excuse or undermined his argument and allowed the jury to return a guilty verdict notwithstanding its determination that the evidence was insufficient, is, I think, not remotely the most plausible reading of the record here. But I don't understand why it's correct that the government could not have compelled this witness's attendance. So there's really no dispute in this case that Mr. Ashraf is an Egyptian national living in Egypt. And so he was, as a legal matter, outside the Court's subpoena power. And so that's why we could not have forced him to testify, even if we had wanted to. But you can see the degree of the instruction that the reason he was not called was because of that is an error? So I think it could have been more precise. What's that mean? Well, Dr. Al-Mashadi is correct insofar as he notes that there's no trial evidence that explains why any particular witness did not testify. And so it would be, I think— Isn't it inaccurate to say there's no basis for the statement that the reason he was not called is because he was beyond the subpoena power? There's nothing in the record that shows that's why he was not called. I would agree with you on that. So that's just error. So I think I would certainly understand if the Court would decide that that instruction was outside the district court's discretion in giving it, for that very reason. And then I assume you think it's not prejudicial, though. Right. It's harmless error. It's harmless error because— And what's the standard for that if the judge states a fact that is wrong like that about the evidence? Is the burden on you to show that it's not harmless beyond a reasonable doubt at that point? So the burden is definitely on us because it's preserved. Whether it's an error of constitutional dimension, which would implicate the beyond or a non-constitutional error, which has a lower burden for us to meet. This Court in Paiva applied the constitutional harmless error standard to this kind of error. Okay. So how can we meet that standard for harmless error? Because the reason why any particular witness in this case didn't testify is not a fact of any relevance to any issue in this prosecution. Now, Dr. Abhoshabi's argument for this is he had argued to the jury that it should acquit Dr. Abhoshabi of the conspiracy offense because there was insufficient proof that he conspired with anyone else. And as part of that argument, he argued that we don't know anything about the intent of Ashraf and the other Egyptians. And he calls this an evidentiary hole in the case. And as we make clear in our answering brief— But his argument was that he didn't have the mens rea. Well, he argued that as well. But the particular argument— But they did. Well, so his argument was we actually don't know anything about the Egyptians with respect to their intent. You know, what do they know about American law? How would they know that what they're doing is unlawful? Which makes it hard for them to conspire. That was the argument. Right. And the argument is a permissible argument. It's just one that was entirely unaffected by the court's subpoena power instruction. Because, again, the reason why a witness didn't testify has no relevance here. If the jury had— Well, if the jury thinks the only reason he's not testifying is because you can't get him, that's different than you didn't call him because you think he'd be harmful. Well, either way— Well, if they thought it was you didn't call him because he'd be harmful, that's helpful to him, isn't it? Well, but that's the inference the jury's not allowed to draw because he was denied. That would be the inference that would be available if the district court had given the missing witness instruction. Well, they may not be entitled to the instruction, but would it be impermissible for the jury to draw the inference? I think it would. I think Jimenez, Torres, and Diaz made clear that in those cases their court was saying counsel cannot argue to the jury that the simple fact that a witness didn't testify can be held against one party or the other. So long as that's true, this can't possibly have been prejudicial, then, to have misstated the reason he didn't testify. That's the argument. Because, again, in reading this instruction in context with all of the other instructions about the government's burden to prove beyond a reasonable element of every offense, the failure to do so requires the jury to acquit. Dr. Aboshadi reads this as saying there was a hole in the case. The jury knew that there was an evidentiary hole in the case, but returned a guilty verdict anyway on the theory that, oh, it's not the government's fault that there was an evidentiary hole in the case because the government couldn't get these particular witnesses. And I think that's just an implausible reading of the record, especially given the presumption that jurors follow their instructions. Had the jury found the evidence insufficient, the jury would have returned a not guilty verdict, and it would not have mattered why the evidence was insufficient. It would only matter that the evidence was. And so that's why this instruction, if it was error, would be harmless error and it would be harmless beyond a reasonable doubt. Precisely because, again, the reason why a witness did or did not testify would not have impaired the jury from returning a not guilty verdict had they found evidence of Dr. Aboshadi. Well, can we go look at it the other way? Is there a risk that the jury might have thought it was likely that that witness would have been helpful to the government? I don't think so, given the no inference instruction that the district court gave, which, again, I think fairly read, squarely foreclosed the jury from making exactly that kind of inference. The final point I would make with respect to both the subpoena instruction and the no inference instruction is that there was ample evidence here that Dr. Aboshadi was conspiring with Dr. Mashali. He was the leader of this enterprise. We recite in our brief the evidence showing Mashali and Dr. Aboshadi working together to submit false information to Boston Medical Center in connection with NEPA's urine screening practices. Dr. Mashali was the one who told the PAs to build this 99214 office evaluation billing code, even though PAs testified that that was almost never the appropriate code. And so that's an independent reason for finding both errors non-prejudicial. Thank you. Thank you. Thank you, Your Honors. I want to start where Mr. Goldman left off on the subpoena power and no inference instructions. And I want to first start with the point that this is all one instruction here. It's rendered in the transcript as one instruction. And the key word in the transcript is, therefore, what the district court tells the jury in the instructions is that because they were beyond the subpoena power of either party and unavailable as witnesses for either the government of the defendant, period, therefore you should draw no conclusions either for or against the defendant or the government from the failure of such witnesses to testify. The two components of the instruction are linked in the instruction. It's one instruction. We have two theories, legal theories, for why that's improper. They're captioned as such in the brief, but what we're talking about here is one instruction that was objected to. And if you go to the page where the objections are rendered, the objection that's stated is that this is a confusing instruction. And the argument that the government has just made to you shows precisely why. The problem with this instruction is that it tells the jurors that they can't draw any inferences from the absence of the witnesses. But the argument that Dr. Avrashadi's counsel made in summation was there's absolutely an inference. You can draw from that. You can draw the inference that there's a hole in the case and that the government hasn't met its burden of proof. And that is an appropriate inference to draw from the absence of evidence, and Jimenez-Torres and Diaz-Diaz say that that's a permissible argument to ask the jury to draw that inference. And so when the district court then said as to this particular matter that's an inference, you can't draw. So you agree it would be improper for the jury, though, to infer that the testimony would be helpful or harmful to one party or another? I mean, the heartland of the missing witness instruction, yes, I agree with that. That's what the judge concluded, and that's a decision we have to answer. So what you're calling an inference is deciding that there wasn't enough evidence? That's right. Yes, Your Honor. That's a conclusion that you can draw after you're going to have it. And you read the instruction to have precluded them from making the judgment that there wasn't enough evidence? I'm sorry, say that again, Your Honor. You read the instruction about no inference to be an instruction that they could not conclude there was not enough evidence? On this basis, yes, Your Honor, that they could not find that, that they could not draw the conclusion from the absence of these witnesses that there was the hole in the case that Dr. Abishadi argued to the jury existed. That I believe is a fair reading of the instruction. I want to, assuming the Court has no other questions on the jury instruction issue, I want to go back to the Fourth Amendment piece and point out that what the government has come up here and argued is exactly what their opinion or what the argument they made to the district court was. And it's Item 3 in Section 3 of the law that Item 3 authorizes the government to seize every piece of electronic data forever and ever. And we simply submit that that's not authorized by the warrant. It's inconsistent with the two-section structure of the warrant. Thank you, Your Honor. Thank you. Thank you both.